The next case on our calendar is Jessica Weyant v. The Phia Group and the Orange-Ulster School District. Good morning, judges of the panel. Sorry, we have the wrong list here. Who is this? Mr. Kannebecker, I believe. Yes, Your Honor. I'm Jessica Weyant. Yes, you may proceed. Thank you. Good morning, judges of the panel. My name is Charles Kannebecker. I represent Jessica Weyant. I reserved two minutes for rebuttal. Initially, exhaustion in this case is not required. It is not required for three reasons. First, the plan does not contain any exhaustion requirement. Two, there's a matter of legally deemed exhaustion. And three, New York law does not require exhaustion as well. Initially, the plan requires exhaustion only for the denials of medical care or for the denial Actually, before you get to exhaustion. What about subject matter jurisdiction? Certainly, Your Honor. Subject matter jurisdiction is actually fairly easy, Your Honor. And that is, we have jurisdiction for both the individual claim and the class action claim. When we look at the amended complaint that was filed in this matter, it's actually very clear. The amended complaint in paragraph three affirmatively pleads that the claim is more than $75,000 in controversy. Paragraph three of the amended complaint And that depends largely on your punitive damages claim? Yes. No, Your Honor. We actually, it does in part, but not entirely. We have claims of $16,057.19 in exact damages. We also have punitive damages claim for conversion, which is allowable in New York. Punitive damages are used in the calculation for removal. The answer to Judge Chin's question is yes. He says you rely primarily on a claim for punitive damages to reach the jurisdictional amount. Isn't that correct? The answer is, in some measure it is, because he also aggregates the claims, which would bring the total to approximately Just a second. It's the same $16,000. You want to get $16,000 for each of the claims, which were for the same cause of action? There were $16,000. There's additionally attorney's fees, cost, interest, items such as that, Your Honor. But you'll agree you don't get three times that because you've got three defendants. That's true. There's only one $16,000. That's correct, Your Honor. All right, so you're $59,000 short. Rough numbers. No, because punitive damages are a recoverable item for conversion. Conversion is an intentional tort. And just as, for example, if I brought a bad faith case or if I brought a consumer fraud case, punitive damages or triple damages were permissible under the law. This isn't a consumer fraud case, is it? No, there was a count, but that was dismissed. What is the basis for arguing the kind of malicious conduct that you would need to get punitive damages? Well, initially, Your Honor, there are two reasons. One, they purposely violated rule GL-505. And two, the other item that has to go... Did they not have at least an argument that this was governed by Maryland law? No, Your Honor. They did not. If I can address them just briefly, not only was there a 505 claim, they also had a 535 claim. There was also the fact that they did policy... The 535 claim only stands against the insurer, and the insurer here is the plan, and they're not a party. Is that correct? No, because NDACs and FEA were agents of the plan. Right, but 535 is specifically to be used against insurers, and neither of them are the insurer. Isn't that correct? They are not the... Well, 535... You can answer that yes or no. Neither of the parties are in the insurer. The insurer is the school district, who is not a party. Isn't that correct? The school district is not a party, but 535 also includes not only insurers, but it also includes other entities, which is one of the items in this case, because 535's... ...that purchase an insurance policy, and here... Jim, I can't hear you. Speak up. Doesn't the statute say other entity that purchase an insurance policy? It says... Your Honor, it says... ...by taxpayer money, right? I'm sorry, Your Honor. I had a hard time hearing that. I apologize. I'm not sure what happened to my audio. 335... Does the courtroom deputy know that we're having trouble hearing Judge Chen? Yes, I'm going to have IT go and check on his mic now, Your Honor. Thank you. 335 applies to an insurance company or other entity, which provides for payment or reimbursement of health care, and that also under the law, the agents are similarly situated. Index and FEA were fully authorized agents. The statute could have said insurers or their agents, but it clearly doesn't. Well, Your Honor, no part of the law says a person is liable. For example, a person driving a car, it doesn't say, you know, nobody shall drive or operate the car or their agent. All agency is a principle that's superimposed on the underlying liability. Mr. Cannabecker, I don't know if you can hear me better now. I can. All right. The statute says an other entity that provides reimbursement under a policy of insurance or an insurance contract. And so my question is, we do not have that here, do we? We do, sir. We do. What insurance contract is there in the case? There's the Orange Ulster Health Plan. It's self-funded. In other words, it's not... They haven't purchased a policy from an insurance company to back it up. It's funded... That's true, Your Honor. But the idea of... Let's take it out of the statute. The insurance policy does not have to be an actual insurance policy with a premium and a... Like, you don't have to go to Aetna or UnitedHealthcare. Rather, it's an insurance... It's any agreement, Your Honor. This is under the insurance law, section 11011. An insurance contract is any agreement or other transaction whereby someone is obligated to... Let me ask you a different question. Maybe this goes to the exhaustion issue. The lien was $16,000. It seems to me this is a case that was crying out for resolution. Here you are in your third court, you're in the Second Circuit, and this was a $16,000 claim that I would think could have been, should have been resolved maybe administratively, but certainly along the way at some point. I'm not sure why you're here. We're here, Your Honor, because of the plan. For the time period 2013 through 2017, only the Orange County Alta School District itself recovered over $400,000 in subrogation from people. Even after this case is going from... Excuse me, is that from the state of New York, the $400,000, or from other places? Those are from the teachers. From that time period, the Orange Alta School District alone by itself recovered from its $400,000. From the period of October 2017 through July of 2018, just eight months, they required another $62,000 from their teachers, all of whom had been injured in accidents, and they took the money back from these people improperly. Well, they covered the medical expenses. They did. But it's also, Your Honor, not only are we looking at GOL 5335, the other part of this case that has not gotten attention, and which the defendants did not appeal, by the way, is that the insurance... We've lost you, Mr. Counterbaker. Courtroom deputy, we've lost Mr. Counterbaker. Yes, it seems like his connection. I'm trying to see if he comes back, because he hasn't got kicked out as of yet, but we may lose him altogether. I'll let you know shortly. Or, yeah, it looks like he's still in the room, but his connection is frozen. Mr. Counterbaker, we're going to reserve your time and put it on your rebuttal and turn to the FEA group. Where is the FEA group? That's someone named Catherine Downey? Yes, Your Honor, can you hear me? Yes, but I don't see you yet. I'm having some difficulty with my video. Would you prefer that I proceed just by audio? Sure. Okay. My name is Catherine Downey, and I represent the FEA group and Index Corporation. Judge Pooler? Yes. I'm concerned whether Mr. Counterbaker can hear what's going on. Oh, good point. Courtroom Deputy, will you inquire whether Mr. Counterbaker can hear me? I'm actually, the phone's ringing now. I'm reaching out as we speak. Okay. Why don't we wait for a minute, Ms. Dowey, and stop the clock, and we will see if everyone is on the line. Technology. I'm asking the courtroom deputy, any news about Mr. Counterbaker? It went to go get it for me now, Your Honor, so I'm on hold as we speak. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.  Okay. I'm thinking we should go to the next argument and hold everyone in their place and see if that one works better.